UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNETTE TIGGELMAN,

        Plaintiff,

v.                                   Case No. 1:15-cv-786
                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff alleged a disability onset date of November 1, 2010. PageID.269. Plaintiff identified her disabling conditions as bipolar disorder, fibromyalgia, rheumatoid arthritis, interstitial cyst, shoulder problems, depression, mental problems, anxiety, bladder problems and stress. PageID.260. She has an associate's degree in applied science in early childhood, and previous employment as a worker in an animal shelter, a janitor, a cashier and a stocker at a bakery. PageID.60, 261. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 7, 2014. PageID.36-49. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

2

of not less than twelve months.  *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th

Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in

social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716,

719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of October 23, 2012.  PageID.38.  At the second step, the ALJ found that plaintiff had severe impairments of fibromyalgia, bipolar disorder, and borderline personality disorder.  *Id.*  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.39.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can sit without limitation; but can only occasionally climb, balance, stoop, kneel, crouch, and crawl; she can only perform simple, repetitive tasks; she must not have constant contact with coworkers or the public and any contact should be superficial and she may not work at jobs involving care-giving tasks such as caring for children, the elderly or the disabled.

PageID.41. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.48.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy.  PageID.48-49.  Specifically, the ALJ found that plaintiff could perform unskilled, light work in the region (defined as the Lower Peninsula of Michigan) and the nation as follows:  packager (6,500 jobs in the region and 460,000 jobs in the nation); production assembler (5,400 jobs in the region and 110,000 jobs in the nation); and office

4

helper (11,000 jobs in the region and 330,000 jobs in the nation).  PageID.49.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since October 23, 2012, the date the application for SSI was filed.  PageID.49.

### III.  ANALYSIS

Plaintiff raised two issues on appeal.

**A.    Whether the Commissioner erred as a matter of law in failing to assign controlling weight to plaintiff's treating physician, Dr. Amy L. Hogue, M.D.**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

5

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Hogue is licensed to practice medicine in Michigan and Indiana, is certified by the American Board of Family Medicine, and has been employed at Muskegon Family Care since November 2009. PageID.526. On September 25, 2013, Dr. Hogue testified: that plaintiff was her patient; that she has been familiar with plaintiff since January 2010; that she was currently treating plaintiff; that plaintiff has a working diagnosis of bipolar disorder; and that she prescribes plaintiff's medication. PageID.528-530.

Dr. Hogue further testified that she coordinates plaintiff's care with Ms. Kimberly Shaw at Muskegon Family Care. PageID.528. In the words of Dr. Hogue, "Ms. Shaw does counseling, kind of behavioral therapy and personal therapy. I'm her family physician and prescribe medication." PageID.528-529. In caring for plaintiff, Dr. Hogue and Ms. Shaw view each others' notes. PageID.529. The doctor stated plaintiff's current diagnosis as bipolar disorder, borderline personality disorder, anxiety disorder, fibromyalgia and chronic interstitial cystitis. *Id.* Plaintiff has had mental problems since the doctor started treating her. *Id.* The doctor described plaintiff's

6

symptoms as including high anxiety, inability to stay focused, she gets very depressed, she cries, and, she does not come out of her room; then, during times of high energy, she makes decisions that she often regrets later ("spontaneous decisions that aren't always very logical"), she has unstable relationships, difficulty maintaining friendships, and difficulty completing responsibilities. PageID.529-530.  The doctor has made personal observations of plaintiff's "ups and downs" and feels comfortable with a working diagnosis of bipolar disorder.  PageID.530.  Plaintiff has been on multiple medications, which have caused side effects including tardive dyskinesia symptoms, restless legs, hypersomnia and worsening depression.  *Id.*  The doctor believes that plaintiff's complaints of side effects are credible.  PageID.531.

When asked about plaintiff's ability to handle an eight-hour work day, the doctor stated that plaintiff "has a tendency to get very stressed" and "overreacts to things that other people wouldn't find to be very stressful which can lead to outbursts, lead to disagreements, arguments, need to take breaks and cool down."  PageID.531-32.  According to the doctor, "I don't suspect it would go well."  PageID.532.  Dr. Hogue stated that she would anticipate that plaintiff would miss two to three days a month in such a work environment.  *Id.*  The doctor also stated that it would be difficult for plaintiff to handle co-workers and supervisors "because of the extent of her mental illness."  *Id.*  The doctor also mentioned that commencing on September 3, 2013, they were trying a new medication, Buspirone, to help with plaintiff's anxiety.  PageID.533.

The ALJ summarized and evaluated Dr. Hogue's opinion as follows:

The record indicates that the claimant has historical diagnoses as to psychiatric impairments, such as her bipolar disorder (see prior Administrative decision, Exhibit C2A).  Nevertheless, the claimant's treatment during the period in question has been exceptionally conservative in nature, consisting of nothing more significant that counseling and visits with her PCP, she is without psychiatric

hospitalization, and despite what appears to be a lack of psychotropic medications during the period in question she is without significant psychiatric symptomology and her unrelated medical visits fail to document psychiatric difficulty.

As noted previously, the claimant's psychiatric treatment appears to be exceptionally conservative in nature and does not consist of the use of prescribed psychotropic medications, all of which is found to be unsupportive of greater limitations than those assessed herein. Moreover, the claimant's meager treatment records, which appear to consist of no more than standard follow-up visits with her PCP, indicate that she is without acute distress, pleasant, cooperative, and displaying good grooming (Exhibit C3F/1; C7F/17, 25; C8F/16; C11F/5, 7). In fact, in June 2012, the claimant reported that her mood was good and that despite circumstantial depression, she was "good" (Exhibit C7F/17). Although the claimant complains of memory problems, her treating g physician noted that the claimant's memory concerns were due to her lack of a structured day, which is consistent with that same physician noting that the claimant was able to remember her activities over the past few days (Exhibit C13F/7). The undersigned has taken into consideration her PCP's records that indicate an anxious mood and affect; nevertheless, there is lack of more significant indicia that she is limited as to her ability to focus, concentrate, or interact with her health care providers. In fact, when the claimant attends unrelated medical visits there is a conspicuous lack of documented psychiatric symptomology and she specifically reported that her mood swings were "stable" and that her counseling is "helpful" (Exhibits C13F/2). The claimant has been prescribed the use of Cymbalta; however, other records indicate that the claimant does not take them on a regular basis (Exhibit C9F; C11F/3). Furthermore, it would appear from the record that the claimant's largest difficulty is related to her familial stress, such as her reports as to difficulty with familial relationships; nevertheless, there is clear evidence in which the claimant indicated that she was caring for her elderly parents (Exhibit C11F/3; C13F/6, 8). Moreover, the claimant appears capable of appropriate interaction with others, as the records indicate that she was capable of multiple relationships, that she was seeking someone "healthy" to be in a relationship with, and she reported that she wanted to join an gym in order to exercise, all of which is indicia of basic abilities as to social interaction (Exhibit C11F/3). Finally, when recommended to seek treatment with a psychiatrist, the claimant refused said recommendation, as she felt it would not help, and she did not want to continue on her prescribe medications (Exhibit C11F/3, 5). Consequently, the undersigned does not find that the claimant's treatment record supports greater limitations than those found assessed herein.

\*     \*     \*

The undersigned affords the medical source statement of Dr. Hogue, a treating physician, little weight (Exhibit C12F). Although Dr. Hogue appears to be the claimant's PCP, based upon the doctor's curriculum vitae, the doctor does not

appear to be specialist in mental health care.  Dr. Hogue opined that the claimant would "likely do worse" in a full-time, eight hour a day work environment, that she would likely have difficulty getting along with coworkers and supervisors, that she would be absent more than 2-3 days a month, that an attempt at work would result in an unsuccessful work attempt or failed work, and that the claimant is unable to handle full-time employment.  However, as noted earlier, Dr. Hogue is not a specialist in mental health care; moreover, the doctor's opinion appears to have been strongly influenced by the claimant's subjective reports, which have been found to be less than credible.  For example, the doctor noted symptomology such as the claimant's inability to come out of her room (Exhibit C12F).  Nevertheless, there is no indicia that the doctor ever *personally* observed the claimant outside of the physician's office; therefore, said symptomology appears to have been based upon subjective complaints supplied by the claimant.  The doctor noted additional symptomology for which there does not appear to be objective reports, such a "lots of energy" and unstable relationships.  Although there is indicia that the claimant's has [sic] familial relational stress, there is also substantial indicia contained in the record to significant capacity for social functioning, such as the claimant's multiple physical relationships and her spending of time with others.  The undersigned notes that the final determination concerning the conclusion of whether or not a claimant is "disabled" is reserved to the Commissioner (20 CFR 404.1527(e) and 416.927(e)).  As such, the undersigned finds Dr. Hogue's assessment inconsistent with the weight of the record, including the submitted assessment from the State agency psychiatric consultant, Judy Strait, Psy.D., a psychiatric specialist, with knowledge and experience evaluating Social Security disability (Exhibit C4A).  Therefore, little weight is afforded the assessment of D. [sic] Hogue.

PageID.44-45, 47 (emphasis in original).

Upon review of the record, the Court concludes that the ALJ did not give good reasons for assigning little weight to Dr. Hogue's opinion.  On two occasions, the ALJ improperly discounted Dr. Hogue's opinion with respect to plaintiff's mental impairment because the doctor was not "a specialist in mental health care."  PageID.47.  It is well established that an ALJ can discount a psychologist's opinion about the claimant's physical functioning, because a psychologist is not qualified to diagnose a physical condition.  *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).  However, as an M.D. licensed to practice medicine in Michigan, Dr. Hogue is qualified to treat both physical and mental conditions.  *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (a duly

licensed physician under the laws of most states, can practice and render psychiatric services, i.e., prescribe psychotropic medication, conduct psychotherapy, etc.); M.C.L. § 333.17001(f) ("'Practice of medicine' means the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical *or mental condition,* by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts") (emphasis added). "While the medical profession has standards which purport to restrict the practice of psychiatry to physicians who have completed residency training programs in psychiatry, it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *Sprague*, 812 F.2d at 1232. Thus, for purposes of a disability claim, "[a] treating physician's opinion on the mental state of his patient constitutes competent medical evidence even though the physician is not a certified psychiatrist." *Bushor v. Commissioner of Social Security*, No. 1:09-cv-320, 2010 WL 2262337 at * 10, fn. 4 (S.D. Ohio April 15, 2010). *See also*, *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (where a medical doctor treating a claimant for chronic pain expressed opinions regarding the claimant's mental restrictions, those opinions constituted "competent psychiatric evidence" and may not be discredited by an ALJ on the ground that the doctor is not a board certified psychiatrist); *Eves v. Commissioner of Social Security*, No. 1:14-cv-1241, 2016 WL 1165400 at *4 (W.D. Mich. Mar. 25, 2016) (ALJ erred in concluding that treating physician who was licensed to practice medicine in Michigan was not an acceptable medical source with respect to the claimant's mental impairment).

       The ALJ also improperly discounted Dr. Hogue's opinion because the doctor was "strongly influenced by the claimant's subjective reports, which have been found to be less than

credible."  PageID.47.  A claimant's subjective reports are relevant in evaluating a psychiatric

impairment.  *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1988) ("[m]ental disorders

are not uncommonly diagnosed after one interview").  As the Sixth Circuit explained:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective
> laboratory testing as a medical impairment  .  .  .  consequently, the diagnostic
> techniques employed in the field of psychiatry may be somewhat less tangible than
> those in the field of medicine  .  .  .  In general, mental disorders cannot be
> ascertained and verified as are most physical illnesses, for the mind cannot be probed
> by mechanical devices [ sic ] in order to obtain objective clinical manifestations of
> medical illness  .  .  .  .  [W]hen mental illness is the basis of a disability claim,
> clinical and laboratory data may consist of the diagnosis and observations of
> professionals trained in the field of psychopathology.  The report of a psychiatrist
> should not be rejected simply because of the relative imprecision of the psychiatric
> methodology or the absence of substantial documentation, unless there are other
> reasons to question the diagnostic techniques.

*Id.*, quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987).

For these reasons, the Court concludes that the ALJ did not give good reasons for

assigning little weight to Dr. Hogue's opinion.  *See Wilson*, 378 F.3d at 545.  Accordingly, this

matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand,

the Commissioner should re-evaluate Dr. Hogue's opinion with respect to the extent of plaintiff's

mental impairments.

> **B.   Whether the Commissioner erroneously relied on the
> opinion of a non-examining physician, psychiatric consultant,
> Judy Strait, when such opinion was not based on the review of
> the entire record in the case, and alternatively, assigned little
> weight to the state agency's consulting physician, Dr. Allison
> Bush.**

The gist of plaintiff's claim is that the ALJ relied on the February 22, 2013 opinion

of a non-examining psychologist, Dr. Judy Strait, which was based on a limited record which did not

include:  the opinion of consulting psychologist Dr. Allison Bush; Dr. Hogue's treatment notes; or

11

Dr. Hogue's statement. PageID.46; Plaintiff's Brief (docket no. 10, PageID.554-555). As an initial matter, plaintiff is incorrect with respect to Dr. Bush. The record reflects that Dr. Strait reviewed Dr. Bush's report of February 7, 2013. PageID.152-153, 507-511. In addition, Dr. Strait reviewed treatment notes from Muskegon Family Care as of January 22, 2013. PageID.153. However, plaintiff correctly points out that Dr. Strait did not have a copy of Dr. Hogue's statement, which was not made until September 25, 2013. PageID.524. Under the facts of this case, the Court agrees that the ALJ's reliance on Dr. Strait's opinion, though arguably appropriate when the ALJ discounted Dr. Hogue's opinion, may no longer be appropriate due to the ALJ's improper evaluation of Dr. Hogue's opinion. Accordingly, on remand, the ALJ should also re-evaluate Dr. Strait's opinion to the extent that it did not incorporate subsequently submitted medical evidence.

### IV.  CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to (1) re-evaluate Dr. Hogue's September 25, 2013 opinion with respect to plaintiff's mental condition; and (2) re-evaluate Dr. Strait's opinion to the extent that it did not incorporate subsequently submitted medical evidence. A judgment consistent with this opinion will be issued forthwith.


Dated:  September 27, 2016                    /s/ Ray Kent
                                              RAY KENT
                                              United States Magistrate Judge